**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
E. M. C,

                          Plaintiff,

                 -against-

MARTIN O'MALLEY,

                        Defendant.
-----------------------------------------------------------------X

**REPORT &
RECOMMENDATION**

**24-CV-233 (JGLC) (JW)**

**JENNIFER E. WILLIS, United States Magistrate Judge**

**to the Hon. JESSICA G. L. CLARKE, United States District Judge:**

Plaintiff E.M.C. ("Plaintiff") brings this action pursuant to Section 205 (g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) for judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denying Plaintiff's application for Supplemental Security Income benefits ("SSI"). The instant matter is now before this Court for a report and recommendation.

## I.      BACKGROUND

### A.    Procedural History

On November 4, 2021, Plaintiff completed an application for SSI benefits. Dkt. No. 9 (hereinafter "R. ___") at 251.[1] Plaintiff's application was denied on February 18, 2022. R. at 115–19. After reconsideration, Plaintiff's application was denied

---

[1] All references to page numbers within the SSA Administrative Record (Dkt. No. 9) are in accordance with the page numbers found at the bottom right corner of the page.

again on April 20, 2022.  R. at 131–35.  On June 7, 2022, Plaintiff filed an appeal and requested a hearing before an Administrative Law Judge ("ALJ").  R. at 145.

On October 27, 2022, Plaintiff and her counsel appeared via teleconference at a hearing before ALJ Vincent Cascio ("ALJ Cascio"). R. at 44–72.  In a decision dated November 3, 2022, ALJ Cascio found that Plaintiff was "not disabled under section 1614(a)(3)(A) of the Social Security Act."  R. at 37.  On December 30, 2022, Plaintiff requested a review of ALJ Cascio's decision, and on November 16, 2023 the Appeals Counsel denied that request.  R. at 1–3, 242–47.  Plaintiff filed the instant action on January 11, 2024.  Dkt. No. 1.

**B.    Plaintiff's Background**

Plaintiff was forty-seven years and ten months old at the time of her application for SSI.  R. at 251.  Plaintiff is a high school graduate and has no past relevant work experience.  R. at 36, 51.

**C.    Relevant Medical History**

Plaintiff has a lengthy history of medical visits and examinations, but the Court will only discuss in detail the medical history relevant to the arguments set forth in the motion.

i.    <u>Dr. Pardell</u>

Between 2018 and 2022, Dr. Pardell had regular appointments with Plaintiff, assessed her mental state, and prescribed her medication.  R. at 399–430, 450–457. On October 20, 2021, Dr. Pardell completed an impairment questionnaire where he indicated that Plaintiff previously or currently suffers "episodes of mania and

depression," "persistent social anxiety, and has withdrawn to staying in her home." R. at 433. The impairment questionnaire also indicated that Plaintiff had six categories of "moderate-to-marked" limitations and seven "marked" limitations. R. at 434. Dr. Pardell also indicated in the impairment questionnaire that Plaintiff "is currently fully disabled from gainful employment." R. at 435.

In June, August, and September 2022, Dr. Pardell conducted phone sessions with the Plaintiff and later recorded treatment notes that Plaintiff was generally doing well in her home with the occasional visit from either her mother, friend, or neighbor. R. at 473–75. The June treatment notes recorded that Plaintiff, under the above-described circumstances was experiencing "no severe, depression, anxiety or mania," while the August and September treatment notes recorded that "she is not depressed, anxious, manic, or paranoid." R. at 473–75. Treatment notes from all three sessions discussed maintaining Plaintiff's prescribed medication. R. at 473–75.

ii.    Dr. Murphy

On February 9, 2022, Dr. Murphy conducted a consultive psychiatric evaluation of the Plaintiff. R. at 429. Dr. Murphy's evaluation indicated that Plaintiff had "mild limitations" using reason or judgment to make work-related decisions, interacting with supervisors, co-workers, or the public, and regulating her emotions or behavior. R. at 442. Otherwise, Dr. Murphy's evaluation stated that Plaintiff had "no evidence of limitation" regarding all other areas. Dr. Murphy's evaluation stated that Plaintiff's skills regarding concentration and memory could not be assessed because Plaintiff refused to participate in that assessment. R. at 441. However, Dr.

3

Murphy's evaluation also stated that Plaintiff's insight and judgment were "fair," her cognitive functioning is "average," and her "[g]eneral fund of information [is] somewhat limited." R. at 441.

### iii. Drs. Hoffman and Penny

On February 16, 2022, Dr. Hoffman, a non-examining consultant, completed a mental residual functional capacity assessment. R. at 75–90. Dr. Hoffman reviewed a some of Plaintiff's medical history and concluded that she had some "moderately limited" abilities and several "not significantly limited" abilities. R. at 83–86. Dr. Hoffman's assessment concluded that Plaintiff: (1) "is able to understand and remember simple and some complex instructions and procedures"; (2) "can maintain adequate attention and concentration to complete work like procedures and can sustain a routine"; (3) may benefit from an environment where she is precluded from intensive interaction with the public but appears capable of routine interactions with coworkers and supervisors"; and (4) exhibits some difficulty with adaptation but is able to cope with basic changes and make routine decisions." R. at 87.

On April 20, 2022, upon reconsideration, Dr. Penny reviewed Plaintiff's records, made a similar evaluation, and agreed with Dr. Hoffman's findings. R. at 103–08. Dr. Penny's evaluation states, "the initial evaluation appears valid and consistent with the records obtained" and the "[i]nitial evaluation is affirmed." R. at 108.

4

iv.    Drs. Clapp and Ellis

On September 17, 2022, Drs. Clapp and Ellis completed an impairment questionnaire that indicated Plaintiff suffers from bipolar disorder, current episode depressed, panic disorder, and social anxiety disorder.  R. at 459.   The impairment questionnaire also indicated that Plaintiff had six "moderate-to-marked" limitations and six "marked" limitations.  R. at 462.

On September 19, 2022, Drs. Clapp and Ellis completed a written summary of a psychiatric evaluation of Plaintiff.  R. at 456–69.  The behavioral observation noted that:

> She appeared to adequately understand the interviewer's questions but was limited in her capacity to provide detailed responses. Her affect appeared agitated, and she would get distracted and irritated by her mother throughout the interview. Her speech was at a normal rate and volume. She was distractible throughout the interview and her insight appeared limited. Her judgment appeared adequate. Medical records were also reviewed to corroborate the patient's report. It is the writer's belief that the evaluation is an accurate reflection of the patient's history and current functioning.

R. at 466.  The mental status exam portion of the evaluation noted that Plaintiff's affect was "agitated," her mood was "depressed and irritable," her insight and judgment "appeared limited," and her attention and concentration was "distractable." R. at 468–69.  Plaintiff's estimated intelligence was not assessed.  R. at 469.  All other categories of the metal status exam appeared normal.  R. at 468–69.

**D.    ALJ Cascio's Decision**

On November 3, 2022, ALJ Cascio issued a decision denying Plaintiff's applications for SSI and finding her not disabled.  R. at 27–37.  In reaching a decision,

ALJ Cascio applied the standard five-step analysis.  R. at 29–36.  At step one, ALJ Cascio found that Plaintiff had not engaged in substantial gainful activity since her application date of November 4, 2021.  R. at 29.  At step two, ALJ Cascio found that Plaintiff suffered from severe impairments such as "social anxiety disorder, bipolar disorder, a panic disorder, and generalized anxiety disorder" and those impairments "significantly limit the ability to perform basic work activities."  R. at 29–30.  At step three, ALJ Cascio found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  R. at 30–31.

At step four, ALJ Cascio concluded:

> … [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out simple, routine, repetitive work-related tasks, with only occasional contact with the public, co-workers, and supervisors. The person must work in a low stress job, defined as requiring only occasional decision-making and changes in the workplace.

R. at 31.  In reaching the residual functional capacity ("RFC") determination, discussed the persuasiveness of each medical opinion and considered Plaintiff's hearing testimony.  R. at 32–36.

ALJ Cascio found Dr. Pardell's opinion unpersuasive because the "opinion lacks support in Dr. Pardell's own treatment records, and is not consistent with the objective findings of the consultative examiner…."  R. at 34.

When evaluating Dr. Murphy's opinion, ALJ Cascio found it partially persuasive because it was "generally consistent with the unremarkable clinical

findings and minimal subjective symptoms and limitations in activities of daily living reported by the claimant during the exam." R. at 34. However, ALJ Cascio concluded that when considering Plaintiff's mental health history, Plaintiff "would be more limited than set forth by the consultative examiner." R. at 34–35.

ALJ Cascio considered the persuasiveness of Drs. Hoffman and Penny's opinions together. R. at 35. In doing so, ALJ Cascio found them "generally persuasive, as they are based on a thorough review of the record and supported by these generally unremarkable clinical records and the findings of the consultative exam." R. at 35 (internal references omitted). ALJ Cascio noted that while Plaintiff submitted subsequent records, "treatment records indicate stable functioning and good medication response, without evidence of any worsening in symptoms" and "the additional psychiatric evaluation at Exhibit 7F was also generally normal." R. at 35.

ALJ Cascio found Drs. Clapp and Ellis' opinion partially persuasive. ALJ Cascio reasoned that the opined "moderate limitations completing complex/detailed tasks, remembering procedures, interacting with others and maintaining socially appropriate behavior, and maintaining a schedule" were "generally consistent with and supported." R. at 35. However, ALJ Cascio reasoned that the opined "marked limitations in functioning, such limitations are not well supported by the generally stable and unremarkable clinical examinations and treatment records…." R. at 35.

Finally, ALJ Cascio determined that while Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record…." R. at 32.  ALJ Cascio also noted that Plaintiff "reported activities of daily living that are not as limited as one would expect given her allegations regarding the limiting effects and intensity of her symptoms." R. at 33.  In support of that statement, ALJ Cascio lists Plaintiff's reported activities of caring for her cat and plants, caring for herself, household chores, cooking, watching tv, and having dinner with friends or neighbors. R.  at 33.

At step five, ALJ Cascio conceded that Plaintiff has no past relevant work experience.  R. at 36.  After evaluation of the five steps, ALJ Cascio concluded that Plaintiff was not disabled.  R. at 37.

## II.    LEGAL STANDARD

### A.    Standard of Review

"The court's review is limited to 'determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard.'" Jonathan G. v. Comm'r of Soc. Sec., No. 1:23-CV-989 (GRJ), 2023 WL 10674590, at *2 (S.D.N.Y. Nov. 30, 2023), report and recommendation adopted, No. 23-CV-989 (JGLC), 2024 WL 1342805 (S.D.N.Y. Mar. 29, 2024) (citing Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009)).  The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Lamay v. Commissioner of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). If a reviewing court finds that there is substantial evidence supporting the Commissioner's decision, it must be upheld. See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

"On the basis of this review, the court may 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Intonato v. Colvin, No. 13-CV-3426 (JLC), 2014 WL 3893288, at *6 (S.D.N.Y. Aug. 7, 2014) (quoting 42 U.S.C. § 405(g)). "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand is warranted "for further development of the evidence" or for an explanation of the ALJ's reasoning. Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotations omitted). Additionally, an ALJ's "[f]ailure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F. 3d 260,265 (2d Cir. 2008) (internal citations omitted).

## B.    Five-Step Sequential Evaluation Process

Under the Social Security Act, a claimant is disabled if they lack the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. at § 423(d)(2)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

10

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

See Rolon v. Commissioner of Soc. Sec., 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014) (citing Shaw v. Chater, 221 F.3d 126, 132 (2d Cir.2000)); see also 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof during steps one through four and then the burden shifts to the Commissioner at step five. See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. See Butts v. Barnhart, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.    DISCUSSION

Plaintiff makes two categorical arguments in her motion to reverse and remand the Commissioner's decision to deny her SSI.  Plaintiff first argues that ALJ Cascio erred in his evaluation of the relevant medical opinions.  Dkt. No. 10 ("Pl. Memo") at 8–17.  Second, Plaintiff argues that ALJ Cascio's "evaluation of [Plaintiff's] subjective statements is not supported by substantial evidence."  Pl. Memo at 17–21. This Court addresses each in turn.

### A.    The ALJ's Evaluation of Medical Opinions

In arguing that ALJ Cascio erred in evaluating the relevant medical opinion evidence, Plaintiff advances a myriad of arguments including: (1) ALJ Cascio failed to explain why his RFC finding contradicted the medical opinions; (2) he incorrectly

concluded that the medical opinions where inconsistent with treatment notes; (3) he erred in relying on Dr. Murphy's report; and (5) he erred in "ruling that opinions from non-examining state agency medical consultants were 'generally persuasive.'" Pl. Memo at 8–17.

    i.   <u>The RFC Finding</u>

Plaintiff argues that despite agreeing with opinions regarding her ability to understand, remember, or carry out simple instructions, ALJ Cascio rejected those opinion's limitations and failed to explain why he rejected them. Pl. Memo at 10–11. Plaintiff argues that when an ALJ's RFC conflicts with a medical opinion, the ALJ must explain why the medial opinion was not adopted. <u>Id.</u>

Defendant argues that an ALJ "has the discretion to reject those portions of a medical opinion that are not supported by and are contrary to the evidence of record, while accepting those portions that are supported by the record evidence." Dkt. No. 11 ("Def. Memo") at 11. Defendant further argues that in the instant matter, "the ALJ properly evaluated the medical opinions of record and articulated [his] findings concerning the persuasiveness of each opinion pursuant to 20 C.F.R. § 416.920c." <u>Id.</u>

Post 2017, ALJs no longer assign weight to a medical opinion, but instead "evaluate their persuasiveness based on the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any other factor that tends to support or contradict a medical opinion." <u>Jackson v. Kijakazi</u>, 588 F. Supp. 3d 558, 578 (S.D.N.Y. 2022) (cleaned up) (quoting 20 C.F.R. §§ 404.1520c(a)–(c), 416 920c(a)–(c)). Supportability and consistency are the two most

12

important factors considered when evaluating the persuasiveness of a medical

opinion. 20 C.F.R. §§ 404.1520c(b)(2).  While an ALJ may discuss the three remaining

factors, it is not required.  Id.

"[I]n explaining RFC findings, an ALJ is not required to reconcile explicitly

every conflicting shred of medical testimony, and is not precluded from crediting only

portions of a medical opinion, the ALJ must explain why a medical opinion was not

adopted if the RFC assessment conflicts with it."  Caproni Brown v. Kijakazi, No. 22-

CV-2452 (SDA), 2023 WL 4271535, at *10 (S.D.N.Y. June 14, 2023), report and

recommendation adopted sub nom. Brown v. Kijakazi, No. 22-CV-2452 (JMF), 2023

WL 4267599 (S.D.N.Y. June 29, 2023) (cleaned up); see also Prosa v. Comm'r of Soc.

Sec., 749 F. Supp. 3d 444, 454 (S.D.N.Y. 2024).

Here, ALJ Cascio found that the Plaintiff's RFC consisted of:

> a full range of work at all exertional levels but with the following
> nonexertional limitations: the claimant can understand, remember, and
> carry out simple, routine, repetitive work-related tasks, with only
> occasional contact with the public, co-workers, and supervisors. The
> person must work in a low stress job, defined as requiring only
> occasional decision-making and changes in the workplace.

R. at 31.  In reaching that conclusion, ALJ Cascio explained how persuasive he found

each medical opinion.  R. at 32–36.  ALJ Cascio also explained exactly how he

concluded that Plaintiff could perform the described RFC.  Id.  More specifically, ALJ

Cascio relied heavily on treatment records beginning in 2021 or after, consulting

examinations, and Plaintiff's testimony.  Id.  Thus, to the extent the RFC conflicted

with any medical opinions, ALJ Cascio indeed explained why it did.  This Court must

now turn to whether the evidence on which ALJ Cascio relied amounted to "sufficient evidence" to support the RFC.

    ii.   <u>Treatment Notes</u>

Plaintiff argues that the treatment records of Drs. Pardell, Clapp, and Ellis were consistent with their medical opinions that Plaintiff had moderate to marked limitations. Pl. Memo at 13. Plaintiff argues that the records of those doctors evince "fatigue, disturbed sleep, decreased speech, isolation, sadness, feelings of guilt, mania, irritability, social anxiety, and disturbed appetite with weight change." <u>Id.</u> (internal citations omitted).

Defendant asserts that ALJ Cascio properly found that Drs. Clapp and Ellis' medical opinions was partially persuasive. Def. Memo at 12. To support that assertion, Defendant argues that Dr. Ellis' treatment notes did not support marked limitations, but rather showed "that while Plaintiff had some distractibility, she was cooperative and had full orientation, good eye contact, no suicidal/homicidal ideations, and normal thoughts." <u>Id.</u> Additionally, Defendant argues that "Dr. Ellis's marked limitations were inconsistent with good mental status findings" because "Plaintiff was cooperative and had coherent thoughts, full orientation, good concentration, good insight, and good impulse control." <u>Id.</u>

Defendant then argues that while Dr. Pardell opined that Plaintiff had several marked limitations regarding her functionality, those limitations "were unsupported by his own treatment notes." Def. Memo at 13–14. In support of that argument, Defendant states that "Dr. Pardell's most recent notes in September 2022 showed

that Plaintiff was continuing 'to do well' and was 'not depressed, anxious, manic, or paranoid.'" <u>Id.</u> at 14.

Neither Party cites caselaw that details what constitutes sufficient contradiction between a doctor's treatment notes and their medical opinion. However, the Second Circuit in <u>Monroe</u> provided an example of when a doctor's treatment notes contradicted their opinion.[2] <u>Monroe v. Comm'r of Soc. Sec.</u>, 676 F. App'x 5, 8 (2d Cir. 2017) (summary order). In <u>Monroe</u>, the Circuit found that the ALJ properly relied on contradictory treatment notes to discount a doctor's assessment in reaching their RFC determination. <u>Id.</u> Amongst other inconsistencies, the treating physician in <u>Monroe</u> determined that the plaintiff "had little ability to deal with stress or the public and was limited in behaving in a stable manner in social situations." <u>Id.</u> However, his treatment notes contradicted that finding by listing that the plaintiff "engaged in a range of recreational activities around the same time, including snowmobiling trips to Ontario and Quebec, horseback riding, four-wheeling, and multiple vacation cruises." <u>Id.</u>

Similarly, Courts in this district have found an ALJ does not err in discounting a doctor's assessment when they point to outright inconsistencies between the doctor's assessment and their treatment notes. <u>See</u> <u>Jeffrey v. Kijakazi</u>, No. 21-CV-6502 (JLR) (BCM), 2023 WL 3477580, at *6 (S.D.N.Y. May 16, 2023) ("The ALJ referenced explicit instances of apparent inconsistencies between Dr. Wendt's notes

---

[2] This Court notes that <u>Monroe</u> was examined under the now-outdated treating physician rule.

and his ultimate assessment."); <u>Campbell v. Comm'r of Soc. Sec.</u>, No. 1:19-CV-03215 (SDA), 2020 WL 5641200, at *9 (S.D.N.Y. Sept. 22, 2020) ("although Dr. Schwartz indicated that Campbell was unable to work due to various symptoms of anxiety, Dr. Schwartz's treatment notes reflected unremarkable mental status examinations and included statements by Campbell that he was doing well with no symptoms and taking advantage of opportunities to make extra money."); <u>Pantoja Santiago v. Comm'r of Soc. Sec.</u>, No. 18-CV-1226 (BCM), 2019 WL 6831533, at *17 (S.D.N.Y. July 23, 2019), <u>report and recommendation adopted</u>, No. 18-CV-1226 (KPF), 2019 WL 3798055 (S.D.N.Y. Aug. 13, 2019) ("as the Commissioner points out, Dr. Tan checked a box on his Medical Source Statement indicating that plaintiff had a '[b]lunt, flat, or inappropriate affect,' but previously observed, in his only treatment note, that her 'affect was full.'").

Here, ALJ Cascio states in conclusory fashion that he found Dr. Pardell's opinion on marked limitations unpersuasive because his treatment records "lack[ed] any formal mental status examination findings" and his "most recent treatment notes indicate the claimant to be stable and functioning well at baseline with her medication compliance." R. at 34. The ALJ's conclusory statements that Dr. Pardell's medical opinion "lacks support" from his own notes is insufficient because the ALJ must detail the inconsistencies. A closer look at the treatment notes reveals that the only inconsistency described by the ALJ is inaccurate. While the notes mention progress in Plaintiff's overall mood and stability since October 2021, they do not outright or explicitly contradict Dr. Pardell's finding that Plaintiff struggles with

carrying out procedures in the workplace or being present at work.  <u>Compare</u> R. at 431–435 <u>with</u> 450–52, 473–75.

Similarly, ALJ Cascio found that while Drs. Clapp[3] and Ellis also opined that Plaintiff had marked limitations related to performing in the workplace, the same treatment notes from Dr. Pardell rendered their one-time consultation "not well supported."  Again, ALJ Cascio reasons that the treatment notes indicate "mood and other psychiatric symptoms have been well controlled" rather than her ability to function in the workplace.  For the same reasons Dr. Pardell's post-October 2021 treatment notes do not outright or explicitly contradict his own opinion on Plaintiff's limitations, they also do not contradict Drs. Clapp and Ellis opinions.  Moreover, Drs. Clapp and Ellis' September 2022 evaluation indicates that Plaintiff stated she did not feel good "due to recent health stressors such as her health problems and her cat dying" in addition to stating "if she stays in her home and does not leave her house, then she does not have to cope with panic attacks." R. at 466–468.  This is consistent with Dr. Pardells' August and September 2022 treatment notes that while Plaintiff is "not depressed, anxious, manic, or paranoid," she "has not seen any of her friends and has been more isolated" and "is missing the fact that her cat passed away."  R. 473–74.  Accordingly, ALJ Cascio erred in relying on Dr. Pardell's treatment notes to discount Drs. Pardell, Clapp, and Ellis' opinions.

---

[3] ALJ Cascio does not mention Dr. Clapp by name in his decision but cites to "Exhibit 7F at page 9," which is a psychiatric exam signed by Drs. Clapp and Ellis.  <u>See</u> R. at 465–69.

### iii.  Dr. Murphy's Report

Plaintiff argues that, while it is unclear which part of Dr. Murphy's opinion ALJ Cascio found persuasive, he erred in relying on it because Dr. Murphy did not review any of Plaintiff's treatment notes.  Pl. Memo at 14–15.

Defendant argues that the ALJ properly found Dr. Murphy's opinion partially persuasive.  Def. Memo at 16.  More specifically, Defendant argues that Dr. Murphy's opinion "that Plaintiff had full affect, coherent and goal-directed thoughts, clear speech, fair insight and judgment, and full orientation" was "consistent with the generally unremarkable mental status findings of record."  Id.

Here, the ALJ found Dr. Murphy's opinion partially persuasive in Plaintiff's favor by rejecting the lack of limitations opined by Dr. Murphy.  See R. at 34–35.  ALJ Cascio found that Dr. Murphy's opinion that Plaintiff had only a few mild limitations concerning to work-related activities was generally consistent "with unremarkable clinical findings and minimal subjective symptoms and limitations in activities of daily living reported by the claimant during the exam."  Id.  However, ALJ Cascio noted that Plaintiff failed to participate in part of the exam and, based on his consideration of Plaintiff's medical history, Plaintiff would be more limited than set forth by [Dr. Murphy]."  Therefore, Plaintiff's argument—that ALJ Cascio improperly rejected Dr. Murphy's opinion in Plaintiff's favor—is meritless.

### iv.  Non-examining Consultants

Plaintiff argues that ALJ Cascio improperly relied on the opinions of non-examining state agency consultants Drs. Hoffman and Penny for two reasons.  First,

Plaintiff argues that ALJ Casio failed to consider that Drs. Hoffman and Penny did not have access to medical evidence submitted after October 2021.  Pl. Memo at 15. Second, Plaintiff argues that "it is longstanding and well-established law that opinions from non-examining consultants, standing alone, are not substantial evidence."  Id. at 16 (citing Vargas v. Sullivan, 898 F.2d 293, 295-96 (2d Cir. 1990)).

Defendant counters that Drs. Hoffman and Penny's opinions are not rendered stale because the evidence submitted after their opinions "does not demonstrate that Plaintiff's condition significantly deteriorated."  Def. Memo at 18.  To the contrary, Defendant argues the evidence submitted after "continuously showed that Plaintiff was cooperative, doing well, and had full orientation, good eye contact, no suicidal/homicidal ideations, and normal thoughts."  Id.  Defendant also argues that ALJ Cascio properly found the non-examining consultants were supported by other evidence and properly found them generally persuasive.  Id. at 19 (citing Anselm v. Comm'r of Soc. Sec., 737 F. App'x 552, 554–55 (2d Cir. 2018)).

Here, ALJ Cascio reasons that in addition to the two non-examining consultants' opinions being consistent with each other, they were consistent with Dr. Murphy's opinion, they were supported by the recent medical notes of Dr. Pardell, and they were not rendered stale by the additional psychiatric evaluation submitted after those opinions.  This Court has already held that Dr. Pardell's recent treatment notes do not undermine the medical opinions finding marked limitations in the workplace nor do they speak at all to Plaintiff's ability to function in the workplace. Supra Section III(A)(ii) at 14–17.  ALJ Cascio found that Plaintiff was more limited

than what Dr. Murphy opined, so any consistency with that opinion bears little impact on Plaintiff's abilities. Thus, the Parties arguments turn on whether the subsequent psychiatric evaluation would render Drs. Hoffman and Penny's opinions stale.

"No case or regulation ... imposes an unqualified rule that a medical opinion is superseded by additional material in the record." Chevalier v. O'Malley, No. 7:23-CV-2701 (VR), 2024 WL 4264901, at *8 (S.D.N.Y. Aug. 8, 2024), report and recommendation adopted sub nom Chevalier v. Comm'r of Soc. Sec., No. 23-CV-2701 (NSR), 2024 WL 4524621 (S.D.N.Y. Oct. 18, 2024) (quoting Camille v. Colvin, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (Summary Order). "Rather, a medical opinion does not become stale when new material is added to the record unless the additional material raises doubts as to the reliability of the opinion." Chevalier, 2024 WL 4264901, at *8 (quoting Giron v. Kijakazi, No. 22-cv-6226, 2023 WL 6121764, at *11 (S.D.N.Y. Sept. 19, 2023)).

With respect to staleness, ALJ Cascio noted that Drs. Clapp and Ellis' subsequent examination would not render the non-examining consultants' opinions stale because the subsequent psychiatric evaluation was "generally normal, with the exception of some obvious irritability and distractibility due to her mother's presence during the examination." R. at 35. This is a gross mischaracterization of the difference between the opinions. ALJ Cascio seems to focus on the written report summarizing the evaluation and blatantly ignores the impairment questionnaire evaluating Plaintiff's abilities—which is the more comparable document. The non-

examining consultants' opinions in February and April of 2022 that concluded Plaintiff had many "not significantly limited" abilities and a few "moderately limited" abilities. R. at 83–87, 103–08. In comparison, the September 2022 evaluation by Drs. Clapp and Ellis concluded Plaintiff had six "moderate-to-marked" limitations and six "marked" limitations. R. at 462.

In a more pointed example, Drs. Hoffman and Penny both found that Plaintiff's ability to travel to unfamiliar places or use public transportation was "not significantly limited." R. at 86, 106. However, Drs. Clapp and Ellis found Plaintiff's ability to do so was a "marked" limitation. R. at 462. The same stark contrast is true regarding Plaintiff's ability to work in proximity to others without being distracted. Compare R. at 84–85, 105 with R. at 462. Again, the same contrast is true regarding Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors. Compare R. at 85, 105–06 with R. at 462. Accordingly, the subsequent opinions of Drs. Clapp and Ellis indeed raise doubt as to the reliability of Drs. Hoffman and Penny's opinions.

Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lamay, 562 F.3d at 507. Discussed in detail above, because ALJ Cascio heavily relied on both stale consulting medical opinions and treatment notes that did not rise to the level of contradiction sufficient for ALJ Cascio to discount medical several medical opinions, the RFC determination was not supported by "substantial evidence." See Foster v. Comm'r of Soc. Sec. Admin., 692 F. Supp. 3d 105, 112 (S.D.N.Y. 2023) ("Remand may be

warranted where more recent evidence in the record 'directly contradict[s] the older reports of [plaintiff's] functioning on which the ALJ relied' and the ALJ failed to fully analyze the more recent evidence.") (quoting Blash v. Comm'r of Soc. Sec. Admin., 813 F. App'x 642, 644 (2d Cir. 2020)).

### B.    Plaintiff's Statements/Activities

This Court has already concluded that ALJ Cascio's RFC determination is not supported by substantial evidence.  Given that conclusion, this Court need not address Plaintiff's argument that ALJ Cascio improperly evaluated her reported symptoms and activities.

Assuming *arguendo* the Court did reach this argument, it would find ALJ Cascio erred in evaluating Plaintiff's reported activities.  ALJ Cascio relies on Plaintiff's reported activities recorded in Dr. Pardell's treatment notes to conclude they do not support her alleged intensity and limiting effects and are not consistent with the medical evidence.  R. at 32–33.  The reports that Plaintiff could function and care for herself in isolation, with the occasional visit from her mother or a friend, do not contradict medical opinions on her limitations in the *workplace*.  See Pagan v. Berryhill, No. 16-CV-3774 (ER), 2017 WL 4174815, at *6–7 (S.D.N.Y. Sept. 20, 2017).

### IV.    RECOMMENDATION

In the event of remand, the Parties disagree on whether the matter should be remanded for calculation of benefits or further proceedings. Pl. Memo at 21; Def. Memo at 22–23.  While a court may do so, "remanding solely for the calculation of benefits is an extraordinary action and is proper only when further development of

22

the record would serve no purpose." <u>Derwin L. v. Comm'r of Soc. Sec.</u>, No. 1:24-CV-05293 (GRJ), 2025 WL 1092838, at *7 (S.D.N.Y. Apr. 11, 2025) (cleaned up) (quoting <u>Lynch v. O'Malley</u>, No. 22-CV-5620 (CS) (AEK), 2024 WL 728483, at *7 (S.D.N.Y. Feb. 21, 2024)). "[W]here there is conflicting medical evidence, as here, a remand for calculation of benefits is not appropriate, notwithstanding the understandable frustration of the claimant (or, indeed, the court) with undue delay and/or repeated failures to follow applicable law and regulations." <u>Id.</u> (collecting cases).

Here, while this Court finds that ALJ Cascio erred in evaluating multiple pieces of medical evidence, the record indeed consists of medical opinions of varied results. Therefore, this Court recommends Plaintiff's motion be GRANTED but the matter be remanded for further proceedings so that a re-evaluation of such varied opinions may take place.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. <u>See</u> <u>also</u> Fed. R. Civ. P. 6. Such objections, and any responses to objections shall be filed with the Clerk of Court and on ECF. Any requests for an extension of time for filing objections must be directed to Judge Clarke. Failure to file objections within fourteen days will result in a waiver of objections and will preclude appellate review. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cephas v. Nash</u>, 328 F.3d 98, 107 (2d Cir. 2003).

SO ORDERED.

DATED:    New York, New York
          August 11, 2025

*Jennifer E. Willis*

JENNIFER E. WILLIS
United States Magistrate Judge